Lisa NARWICK, f/k/a Bratcher, and Robert Grigus, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Norman P. WEXLER and Mitchell H. Wexler, d/b/a Wexler & Wexler, Defendants.

No. 94 C 6572.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 24, 1995.

---

Eugene A. Propp, David Victor Schultz, Vera Kaye, Propp & Schultz, Chicago, IL, for Lisa Narwick and Robert Grigus.

Maurice J. McCarthy, Michael S. Loeffler, Theodore David Ackerman, Andrew S. Nadolna, Querrey & Harrow, Ltd., Chicago, IL, for Norman P. Wexler and Mitchell H. Wexler.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiffs Lisa Narwick and Robert Grigus bring this putative class action, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* by defendants Norman P. Wexler and Mitchell H. Wexler. Presently before the court is plaintiffs' motion for class certification and defendant Norman P. Wexler's motion for summary judgment.[1] For the reasons set forth below, plaintiffs' motion for class certification is denied, and defendant's motion for summary judgment is granted in part and denied in part.

# I. Background

## A. Plaintiff Robert Grigus

In 1993, plaintiff Robert Grigus, a resident of Palos Park, Illinois, wrote a gambling marker to Empress River Casino Corporation in Joliet, Illinois, payable on his account at First Nationwide Bank in Chicago.[2] The marker was returned for insufficient funds. Defendant Norman P. Wexler, doing business as Wexler & Wexler, filed an action against Grigus in the Circuit Court of Cook County, Municipal Department, First Municipal District, on behalf of Empress River. Grigus was subsequently served with process, and judgment was ultimately entered against him.

## B. Plaintiff Lisa Narwick

In 1992, plaintiff Lisa Narwick, a resident of Morris Illinois, wrote a check to a Wal–Mart store in Morris.[3] The check was subsequently returned for insufficient funds. In December, 1993, defendant filed an action on behalf of the store in the Circuit Court of Cook County, Illinois, Municipal Department, First Municipal District. Approximately two months later, Narwick was served with process at her residence in Morris. She called defendant and agreed to make payments, but failed to follow through. Accordingly, in May, 1994, judgment was entered against Narwick.

Plaintiffs Grigus and Narwick subsequently brought this action as putative class representatives, asserting that the filing of the respective lawsuits violated the venue provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and . . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those

---

1. Plaintiff voluntarily dismissed defendant Mitchell H. Wexler on March 16, 1995.

2. Palos Park, Illinois, is located in Cook County. It falls within the Fifth Municipal District of the Municipal Department of the Circuit Court of Cook County.

3. Morris, Illinois, is located in Grundy County.

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion

There are currently two motions before the court: plaintiffs' motion for class certification and defendant's motion for summary judgment. Consistent with the teachings of the Seventh Circuit, we shall consider the motion for class certification first. *Peritz v. Liberty Loan Corp.,* 523 F.2d 349, 352–53 (7th Cir.1975); *see also Hudson v. Chicago Teachers Union, Local No. 1,* 922 F.2d 1306, 1316–17 (7th Cir.1991) (reaffirming *Peritz* ), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

A. Plaintiffs' Motion for Class Certification

■ Plaintiffs have sought to certify two classes, defined as follows:

a. "District Class": Those against whom defendants have taken legal action on or after November 2, 1993 in the Circuit Court of Cook County, Illinois, First Municipal District, on behalf of creditors to collect allegedly past due debts, and who neither reside, nor signed the contractual documents, in the First Municipal District of the Circuit Court of Cook County, Illinois.

b. "County Class": Those against whom defendants have taken legal action on or after November 2, 1993 in the Circuit Court of Cook County, Illinois, on behalf of creditors to collect allegedly past due debts, and who neither reside, nor signed

the contractual documents, in Cook County, Illinois.

Pl.'s Mot.Cl.Cert. at 1. Under Fed.R.Civ.P. 23, there are four prerequisites to a class action. Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are question of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Because we find the issue of numerosity determinative of plaintiffs' motion, we shall limit our discussion to that requirement.

■ It is well established that plaintiffs are not obligated to identify the exact number of class members. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989). However, a putative class representative must provide some evidence as to the size of the class; he or she "cannot rely on conclusory allegations that joinder is impractical [sic] or on speculation as to the size of the class in order to prove numerosity." *Id.* (citation omitted). In the present case, the only evidence plaintiffs offer regarding the numerosity of the proposed classes is an affidavit by their attorney, David V. Schultz. In the affidavit, Schultz states that he performed a random sampling of the 1,757 cases filed by defendant in the First Municipal District of the Circuit Court of Cook County between July 1, 1993 and June 30, 1994. Schultz maintains that, of the 129 case files he reviewed, thirty-six were debt-collection lawsuits filed against defendants who reside outside of the First Municipal District of the Circuit Court of Cook County, and eleven of those resided outside of Cook County altogether. Schultz then "extrapolates" to suggest that the total number of "outside of Cook County violations" could reach 157, while the total number of "outside-the-First-

District" violations could reach 514.[4] Plaintiffs assert that these numbers are sufficient to satisfy the numerosity requirement.

If in fact plaintiffs' evidence supported Schultz' conclusion that there are 514 likely violations, we would be inclined to agree. However, the affidavit is clearly insufficient to demonstrate the size of the class to any meaningful degree. The only issue discussed in the affidavit is the *residence* of the defendants in the actions filed by the defendant. However, the class defined by the plaintiffs requires not only that the class members live outside Cook County with respect to the Narwick class, or the First Municipal District of the Circuit Court of Cook County with respect to the Grigus class, but also that they signed the contracts sued upon outside of those respective locales. Schultz' affidavit is simply silent as to the latter point. This issue is crucial, however, because the statute provides, and both sides acknowledge, that venue is proper in the judicial district or similar legal entity where the consumer resides *or* where the consumer signed the contract sued upon. *See* 15 U.S.C. § 1692i(a)(2). As a result, the only information which Schultz' affidavit provides is that a random sampling of Wexler & Wexler's cases turned up thirty-six *possible* violations. It is also possible, however, that in each of those cases, the debt was entered into within the City of Chicago (which constitutes the First Municipal District of the Circuit Court of Cook County). If this were the case, then *none* of the cases uncovered by Schultz was filed in an improper venue (assuming for purposes of the class certification discussion that plaintiffs' interpretation of the venue provision is correct), with the exception of the named

plaintiffs. In short, we are simply left to guess.

Furthermore, even assuming that each of the thirty-six cases actually amounts to a venue violation under plaintiffs' reading of the statute, we would have to further assume that the seven percent sample drawn by the plaintiffs' lawyer, Mr. Schultz, is in fact representative of the filings of Wexler & Wexler. We are simply unwilling to pile assumption and inference upon further assumption and inference to find that plaintiffs have met their burden of demonstrating numerosity. The severely limited value of the Schultz affidavit leaves us with little more than speculation as to the actual size of the class; this is clearly inadequate to sustain plaintiffs' burden. *See Kohn v. Mucia,* 776 F.Supp. 348, 352–353 (N.D.Ill.1991).

■ In addition to defending the sufficiency of the Schultz affidavit, plaintiffs assert that they have been unable to provide more definite data regarding the size of each of the classes because we stayed discovery in this action while the parties were preparing their summary judgment motions. However, we only stayed discovery from January 13, 1995 to March 24, 1995; by the terms of our order, discovery was no longer stayed as of the latter date. In other words, plaintiffs have been free to obtain the information they need to support their numerosity claims for over four months. They knew that defendant would raise this issue with respect to class certification, because he raised in his March 15, 1995 reply in support of his motion to strike the Schultz affidavit, which had been filed in conjunction with the motion for summary judgment. They acknowledged that the discovery stay was no longer in

4. Although it does not alter our resolution of plaintiffs' motion, we must express some confusion as to the manner in which Schultz "extrapolated." As we understand it, Schultz asserts that eleven of the 129 cases he surveyed (or 8.527 percent) were filed in Cook County against persons who did not reside in Cook County. From these figures, we assume that Schultz is attempting to determine the likely number of purported violations across the total number of filings for the given year. However, applying the "violation percentage" obtained from the sample to the total number of case filings for the year results in approximately 150 likely violations (assuming the legitimacy of the "extrapolation" approach in the

first place), not 157, as Schultz reports (*i.e.,* .08527 × 1757 = 149.819). Likewise, the sample's "violation percentage" with respect to those cases filed in the First Municipal District of the Circuit Court of Cook County against persons who do not reside in the First Municipal District of Cook County is thirty-six of 129, or 27.907 percent. Applying this figure to the total number of case filings yields approximately 490 likely violations, not 514 (*i.e.,* .27907 × 1757 = 490.326). We assume this difference in "total likely violations" comes from Schultz' decision to round the figures he used to the nearest whole percent, notwithstanding the notable difference caused by employing this simplified method.

effect in their motion for class certification, which was filed on April 28, 1995, but stated that they had not received responses to their discovery requests from defendant. However, they never filed a motion to compel, nor have they indicated to this court that they have made any informal effort to obtain the responses. In short, notwithstanding forewarning that this issue would arise and ample time to collect the information needed to effectively respond, plaintiffs have chosen to place their full reliance on the Schultz affidavit. Under these circumstances, we decline plaintiffs' implicit request to further delay ruling on the pending motions, so that they may prepare another bite at the proverbial apple. In sum, because plaintiffs have failed to sustain their burden with respect to the numerosity requirement, plaintiffs' motion for certification of the proposed classes is denied.

### B. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both the Grigus claim and the Narwick claim. We shall address each claim in turn.

#### 1. The Grigus Claim

■ The Grigus claim essentially presents an issue of law. As discussed above, Grigus resides in Palos Park, Illinois, which is located in the Fifth Municipal District of the Municipal Department of the Circuit Court of Cook County. However, defendant filed a debt-collection action against him in the Daley Center in Chicago, which is located in the First Municipal District of the Municipal Department of the Circuit Court of Cook County. Grigus maintains that this action violated the venue provision of the FDCPA, which provides in relevant part:

Any debt collector who brings any legal action on a debt against any consumer shall—

.    .    .    .    .

(2) ... bring such action only in the judicial district or similar legal entity—

(A) in which the consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a)(2). In a nutshell, Grigus claims that "the judicial district or similar legal entity," as applied to Cook County, refers to the Municipal District of the Circuit Court of Cook County in which the contract was signed or the defendant resides. Narwick, on the other hand, asserts that the language of the statute simply refers to the Circuit Court of Cook County, and that an action in which the defendant resides in Cook County, or in which the contract was signed in Cook County, may be filed in any of the Municipal Districts of the Circuit Court.

In *Newsom v. Friedman,* 94 C 5312, 1995 WL 76869 (N.D.Ill. Feb. 17, 1995), United States District Judge Charles P. Kocoras, faced this issue. Judge Kocoras carefully reviewed the language of the statute, its legislative history, state venue laws, the Rules of the Circuit Court of Cook County, and the Illinois Constitution, and concluded that "judicial district or similar legal entity" refers to the Circuit Court of Cook County, rather than the Municipal Districts thereof. *Id.,* 1995 WL 76869, at *2–5. Following a similar approach, United States District Judge David H. Coar recently reached the same conclusion. *See Blakemore v. Pekay,* 94 C 3418, 1995 WL 399460, at *3–9 (N.D.Ill. June 29, 1995). We find the analysis of *Newsom* and *Blakemore* compelling, and see no reason to differ with the well-reasoned conclusion reached in those cases; we therefore adopt their holdings here. Because Grigus resided in Cook County at the time defendant filed the suit against him, and because the suit was filed in Cook County, we conclude that there was no venue violation. Accordingly, defendant is entitled to summary judgment on the Grigus claim.

#### 2. The Narwick Claim

■ Defendant acknowledges that the debt-collection action against Narwick was filed in the wrong county. Narwick both lives and signed the check sued upon in Grundy County; the action was filed in the Circuit Court of Cook County. Wexler maintains, however, that the FDCPA is not implicated at all, as Narwick was not sued "on a

debt." Instead, he asserts, Narwick was sued under the Illinois Deceptive Practices Act. 720 ILCS 5/17–1, *et seq.* That statute provides in relevant part:

> A person commits a deceptive practice when, with intent to defraud:
>
> . . . .
>
> > (d) With intent to obtain control over property or to pay for property, labor or services of another, ... he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered, or when such check or other order is presented for payment and dishonored on each of 2 occasions at least 7 days apart, is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud.

720 ILCS 5/17–1(B)(d). The statute provides for civil liability in the amount of the check, plus treble damages, attorney fees, and costs. 720 ILCS 5/17–1a. Relying upon this Illinois statute, defendant claims that he was merely prosecuting a fraud claim, rather than attempting to collect on a debt.

■ This argument is pure sophistry. The FDCPA defines a debt as "any obligation or alleged obligation of a consumer to pay money arising out of transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes...." 15 U.S.C. § 1692a(5). It is apparent that Narwick's check satisfies this definition; the check represented Narwick's obligation to pay money for the purchases she made at the Wal–Mart store in Grundy, Illinois. *See In re Scrimpsher,* 17 B.R. 999, 1010 (Bankr.N.D.N.Y.1982) ("[D]ishonored checks (1) are legal obligations to pay money arising out of a transaction when checks are the form of payment, and therefore (2) qualify as a "debt" under the FDCPA.") (citations omitted). Furthermore, the suit filed by Wexler was clearly an attempt to obtain payment on that check on behalf of Wal–Mart (*i.e.,* to collect on the debt). The coverage of the statute is not limited by the method used to collect a given debt. On the contrary, it would do violence to the intent of the FDCPA to allow a debt collector to escape the Act's reaches simply by employing state law tort actions which provide, at bottom, alternate means of debt collection. Accordingly, we reject Wexler's argument that the action he filed against Narwick on Wal–Mart's behalf was not an action to collect a debt.[5]

■ Wexler next claims that, even if the FDCPA is implicated, he has a defense to the action. The FDCPA includes the following provision:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k. Wexler asserts that he "maintains a system of personal oversight to ensure that debtors are sued either in the county in which they reside or where they signed the contract sued upon." Def.'s Mem.

---

5. The cases cited by Wexler do not support the position he advances. For example, the court in *Shorts v. Palmer,* 155 F.R.D. 172 (S.D.Ohio 1994) concluded that shoplifting damages did not constitute a debt, because a thief is not a "consumer," and because no "transaction" was involved in which the shoplifter entered into an agreement to pay. *Id.* at 174–76. Likewise, in *Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163 (3rd Cir.1987), the court held that a cable company's threat of legal action unless the plaintiff paid it $300 for allegedly receiving illegal broadcasts did not implicate the FDCPA, because the parties had never engaged in a transaction, *i.e.,* "the offer or extension of credit to a consumer." *Id.* at 1168. Finally, in *Perez v. Slutsky,* No. 94 C 6137, 1994 WL 698519 (N.D.Ill.1994), which involved a dishonored check, the court dismissed a FDCPA claim because the plaintiff was not the person who negotiated the dishonored check, and therefore had not entered into a transaction with the recipient of the check. *Id.,* 1994 WL 698519, at *2. In the present case, however, it is undisputed that Narwick was acting as a consumer, and that she signed and presented the check to Wal–Mart in exchange for her purchases.

Supp.Summ.J. at 17. In support of this conclusory assertion, Wexler states that he personally reviews each complaint to ensure that the venue identified in the complaint matches the county of residence of the defendant and/or the county in which the relevant contract was signed. In addition, Wexler's affidavit states that the billing clerk performs a second check, to ensure that venue in the listed county is proper.[6] He states that, despite these procedures, the Narwick complaint was inadvertently designated as a Cook County case, and filed accordingly.

 The inquiry as to whether given procedures are reasonable is, by its nature, fact-intensive, and should therefore typically be left to the jury. In those cases in which a court has ruled that the procedures were sufficient as a matter of law, the procedures maintained were far more extensive than those here. *See, e.g., Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383 (D.Del.1991) (employees attended periodic seminars and training relating to FDCPA and were provided with various editions of a FDCPA manual, company issued a three-page memorandum setting forth its FDCPA policy, and a 5″ by 8″ card was posted over every telephone citing language required by the Act); *Howe v. Reader's Digest Ass'n,* 686 F.Supp. 461, 467 (S.D.N.Y.1988) (granting summary judgment based on bona fide error defense where affidavits detailed the "extensive systems and procedures," including use of an independent auditing agency, to ensure compliance with the FDCPA). Indeed, even the single case cited by Wexler in support of his motion, *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1031 (6th Cir.1992), involved greater protections against FDCPA violations that Wexler has set forth. In *Smith,* the defendant supported its defense with a five page instruction manual it sent to each client detailing its collection procedures and compliance with the FDCPA. Furthermore, it supplied the court with affidavits from two employees "which explained why Transworld inadvertently mailed its second collection letter shortly after receiving Smith's cease and desist letter...." *Id.* at 1031 (emphasis omit-

ted). Wexler, on the other hand, merely reviews the complaints to ensure their compliance with the law (which we assume he is independently obligated to do), and asserts that a billing clerk does the same (although we have no affidavit from the billing clerk stating that he or she, in fact, does). While this level of oversight may be sufficient to satisfy a jury that Wexler is entitled to the defense, we cannot conclude that the procedures in place are "reasonably adapted to avoid" FDCPA venue violations as a matter of law. Accordingly, Wexler is not entitled to summary judgment on the Narwick claim.

## IV. Conclusion

For the reasons set forth above, plaintiffs' motion for class certification is denied, and defendant's motion for summary judgment is granted as to Grigus and denied as to Narwick. It is so ordered.

---

6. Wexler did not, however, submit an affidavit from the billing clerk regarding the asserted pro-

cedures.