Nancy L. SARVER

v.

**CAPITAL RECOVERY ASSOCIATES, INC.**

Civil Action No. 96–5644.

United States District Court,
E.D. Pennsylvania.

Nov. 15, 1996.

---

John Shniper, Phoenixville, PA, for Plaintiff.

John J. Hatzell, Jr., Law Offices of Frayne, Anthony, Philadelphia, PA, for Defendant.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff, Nancy Sarver, brings an action against Defendant, Capital Recovery Associates, doing business as CRA Security Systems ("CRA"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. §§ 1692–1692o (West 1982 & Supp. 1996), and for violations of state regulations promulgated under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.Stat.Ann. § 201–3.1 (West 1993).

Before the Court is CRA's Motion to Dismiss for failure to state a claim upon which relief can be granted. For the reasons that follow, CRA's Motion is granted.

## I. FACTS

During the months of May and June 1996, Plaintiff received approximately eight letters from CRA seeking to collect debts that Plaintiff allegedly owed to the Rite Aid Corporation ("Rite Aid"), a non-party to this action. Over the same period of time, Plaintiff also received numerous phone calls from CRA employees admonishing Plaintiff to pay the monies owed. Plaintiff had apparently accumulated these debts on the basis of checks, which later "bounced," tendered to Rite Aid.

Plaintiff contends that during numerous phone conversations with CRA personnel, as well as in the letters she received from CRA dated May 24, June 10 and June 13, she was threatened unreasonably with legal action. In addition, all three letters, it is alleged, demanded payment of a "return check fee," in the absence of any legal basis for such a fee, in the amount of $25.00. Further, the letters dated June 10 and June 13 apparently indicated, unlawfully, that "partial payments will not be accepted." As a result of the foregoing, Plaintiff contends that she has been subjected to emotional distress.

Plaintiff presents counts for violations of the FDCPA (Count I) and regulations enact-

ed pursuant to the UTPCPL (Count II). Under the FDCPA, Plaintiff seeks statutory damages in the amount of $1000.00 for each violation, an amount in excess of $10,000 for mental anguish, as well as costs and attorney's fees. For violations of the state regulations and the UTPCPL, Plaintiff seeks statutory damages of $100.00 per violation or "three times the actual value of her damages, whichever is greater." (Compl. at ¶ 26).

CRA has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

A claim may be dismissed under Fed. R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.; see also Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989) (holding that in deciding a motion to dismiss for failure to state a claim, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party").

## III. DISCUSSION

The FDCPA provides a remedy for consumers subjected to abusive, deceptive, and unfair debt collection practices by debt collectors. The case controlling resolution of the matter *sub judice* is *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987). If the financial transaction at issue in this suit, Plaintiff's dishonored check, does not as a threshold matter constitute a "debt" under the FDCPA, then Plaintiff has no cognizable federal claim. *Id.* at 1167 (stating "[a] threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.' ")

CRA argues that Count I must be dismissed because a dishonored check is not a "debt" as that term is used in the FDCPA and construed by the United States Court of Appeals for the Third Circuit. In response, Plaintiff contends that a dishonored check falls squarely within the plain meaning of "debt" as used in the FDCPA and that, therefore, it is unnecessary to turn to "secondary interpretive aids" to resolve this question. (Pl.'s Mem. Opp. Mot. Dismiss at 1) ("Pl.'s Mem."). Even if one does rely on sources other than the statute itself, Plaintiff still contends that the legislative history supports the proposition that dishonored checks were intended to be "debts" for purposes of the FDCPA.

It is with the pertinent statutory language from the FDCPA that this inquiry must begin.

**Definitions**

As used in this subchapter—

\*  \*  \*  \*  \*  \*

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C.A. § 1692a.

The statute, on its face, does not indicate when, or under what circumstances, a "transaction" gives rise to a "debt." To determine what type of transaction constitutes a debt under the FDCPA, CRA points to the Consumer Credit Protection Act (the "CCPA"), 15 U.S.C.A. §§ 1601–1693 (West 1982 and Supp.1996), of which the FDCPA is but a part, citing *Zimmerman* in support.[1] 834 F.2d at 1168 (stating "[w]e find that the type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection

---

**1.** The declaration of purpose found in the CCPA reads as follows: "The Congress finds that economic stabilization would be enhanced and competition among various financial institutions and other firms engaged in the *extension of credit* would be strengthened by the informed use of credit." 15 U.S.C.A. § 1601 (emphasis added).

Act, i.e., one involving the offer or extension of credit to a consumer"). *See also Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992) (stating "given the small number of cases interpreting the term 'debt' under the FDCPA, courts in other jurisdictions have looked for guidance to cases interpreting analogous provisions of the Consumer Credit Protection Act. . . .") (citing *Zimmerman*, 834 F.2d at 1168).

Relying on such other provisions of the CCPA, the Third Circuit in *Zimmerman* supplied a definition of "debt" for purposes of the FDCPA:

> We find that the type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, *i.e.*, one involving the offer or extension of credit to a consumer. Specifically, it is *a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance, or services' which are 'primarily for household purposes' and to defer payment.*

834 F.2d at 1168–69 (emphasis added).[2]

■ Therefore, the resolution of this Motion to Dismiss depends upon whether the proffer of a check, later dishonored due to insufficient funds, constitutes "a transaction in which [Plaintiff was] offered or extended the right to acquire . . . 'property' . . . and to defer payment." I believe that the answer is a decided no.

■ The tendering of a personal check by the payor is not, *ipso facto*, the extension or offer of credit by the payee. On the contrary, a check is a negotiable instrument under Pennsylvania law, akin to a cash payment, rather than a credit arrangement.[3]

In this case, Plaintiff concedes on almost every page of her brief that the financial instrument at issue was in fact a check. (Pl.'s Mem. at 1) ("Defendants admit that

---

2.  Plaintiff has referred to this Third Circuit statement as "erroneous," (Pl.'s Mem at 10), contending that *"Zimmerman* erred in asserting that consumer credit is the type of transaction dealt with in 'all other' subchapters of the Consumer Credit Protection Act." (Pl.'s Mem. at\ 11). Nonetheless, this Court is constrained to apply Third Circuit precedent even in the face of litigants who disagree with its wisdom.

3.  The Pennsylvania negotiable instrument statute reads, in relevant part, as follows:

    **Negotiable instrument**
    **(a) Definition of "negotiable instrument".—** Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money . . . if it:
    (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
    (2) is payable on demand or at a definite time; and
    (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . .
    *    *    *    *    *    *
    **(c) Negotiable instrument and check.—** An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.
    *    *    *    *    *    *
    **(f) Definition of "check".—** "Check" means:
    (1) a draft, other than a documentary draft, payable on demand and drawn on a bank; or
    (2) a cashier's check or teller's check.
    An instrument may be a check even though it is described on its face by another term, such as "money order."
    13 Pa.Cons.Stat.Ann. § 3104 (West Supp.1996).
    If an instrument meets the definition in § 3104(f) it is a check. If a check under § 3104(f) also meets the conditions of § 3104(a)(2) and (3), then that check is also a negotiable instrument. A negotiable instrument, by definition, is payable upon demand by the person to whom it is tendered. § 3104(a). Exceptions to this general rule might include postdating the instrument or requesting that the payee delay deposit thereof. *See Charles v. Checkrite, Ltd.*, No. 95–2263, slip op. at 3 n. 2 (D.Az. May 9, 1996). In the absence of conditionality at the time of tender, the negotiable instrument/check is payable immediately as a matter of law—even if not as a matter of fact. *Id.* at 3 ("[T]he fact that as a practical matter payment may be delayed due to check processing procedures does not constituted [sic] an extension of credit") (citation omitted). *See also Roberts v. Walmart Stores, Inc.*, 736 F.Supp. 1527, 1529–30 (E.D.Mo.1990) ("Although a delay in payment of the check may be necessary due to technology which does not currently allow for the immediate processing of a check, defendant maintained the right to present the check to the drawee immediately for payment").

plaintiff's *check* was issued for pharmaceuticals ..." and "the dishonored *check* is a debt ..."); (Pl.'s Mem. at 2) ("A *check* necessarily involves ... the same type of delay"); (Pl.'s mem. at 3) ("The responsibility to pay a dishonored *check* is precisely such an 'obligation'"); (Pl.'s Mem. at 4) ("The House report confirms ... that dishonored *checks* are included within the Act"); (Pl.'s Mem. at 5) ("Bad *check* collection is more profitable than collection of other types of debt"); (Pl.'s Mem. at 6) ("Acceptance of a *check* in any event constitutes deferring payment"); (Pl.'s Mem. at 7) ("The *check* collection process involves the merchant's depository bank ..."); (Pl.'s Mem. at 8) ("Nor is a *check* money for the purpose of a gift ..."); (Pl.'s Mem. at 9) ("Deferring payment is an essential, known, and foreseeable element of receiving a *check* ..."); (Pl.'s Mem. at 10) (the meaning of "debt" and "debt collector" under the FDCPA "includes dishonored *checks* ") (emphasis added in all).

There is no allegation in the Complaint that, either at the time of the transaction or subsequently, Rite Aid extended to Plaintiff the opportunity to defer payment on the check. In the absence of any allegation of conditionality in connection with the negotiable instrument made at the time of tender, Plaintiff's check was not an extension of credit and, hence, not a "debt" within the meaning of the FDCPA. *Perez v. Slutsky,* 1994 WL 698519, at \*2 (N.D.Ill.Dec. 12, 1994) ("In order to state a claim under the FDCPA, a plaintiff must allege that the debt giving rise to the cause of action is an offer or extension of credit covered by the FDCPA") (citing *Zimmerman,* 834 F.2d at 1169). The pleading thus fails to state a claim under the FDCPA. The fact that the check was later dishonored does not affect this result.

In finding that a dishonored check—which was intended to be payment when tendered—is not a "debt" under the FDCPA, this Court is in agreement with numerous sister district courts that have considered the question. *Cf. Adams v. Law Offices of Stuckert & Yates and Stephen Needles,* 926 F.Supp. 521, 526 (E.D.Pa.1996) (applying definition of debt as enunciated in *Zimmerman*

and finding "debt" within meaning of FDCPA in part because defendant rendered services to plaintiff "without having to render payment contemporaneously"); *See Roberts,* 736 F.Supp. at 1527 ("Since plaintiff's check was negotiable upon execution, defendant did not grant plaintiff any right to purchase merchandise and defer payment for it ... There is no authority for plaintiff's argument that payment by check absent an agreement by the seller to hold the check for a period of time before presentment to the drawee, constitutes an extension of credit rather than a cash transaction"); *Checkrite,* slip op. at 2 (citing *Zimmerman* and finding "acceptance of a check in payment for consumer goods does not constitute the extension of credit as contemplated by the FDCPA because there is no agreed-upon deferral of payment [as of time check was tendered]"). *Cederstrand v. Landberg,* 933 F.Supp. 804, 806 (D.Mn.1996) (considering whether a dishonored check is a "debt" under the FDCPA and concluding that "[a] complaint under the FDCPA which fails to allege an offer or extension of credit fails to state a claim under the FDCPA") (citing *Zimmerman,* 834 F.2d at 1168–69).

It is true, however, as Plaintiff points out, that the federal courts are not unanimous on this question. *See Keele v. Wexler, et al.,* 1995 WL 549048, at \*3 (N.D.Ill. Sept. 12, 1995) ("This court agrees ... that dishonored checks are legal obligations to pay money arising out of a transaction when checks are the form of payment and, therefore, qualify as 'debt' under the [FDCPA]"); *Narwick v. Wexler, et al.,* 901 F.Supp. 1275, 1281 (N.D.Ill.1995); *In re Scrimpsher,* 17 B.R. 999, 1010 (Bankr.N.D.N.Y.1982) ("I find as a matter of law that dishonored checks (1) are legal obligations to pay money arising out of a transaction when checks are the form of payment, and therefore (2) qualify as a 'debt' under the FDCPA"). Critically, however, those district courts that have found a dishonored check to be a "debt" under the FDCPA were not bound by, and did not rely upon, the definition of "debt" enunciated in *Zimmerman,* whereas those courts which have reached the conclusion that this Court does today have either explicitly relied upon *Zimmerman*—precedent which this Court is bound by—or have adopted its reasoning.

Thus, as the *Zimmerman* court noted in affirming the dismissal of a claim for failure to allege an offer or extension of credit, "[i]nsofar as the defendant[ ] may have over-reached in [its] accusations and efforts to collect money … the plaintiff's remedy is elsewhere than under the FDCPA." 834 F.2d at 1169.

█ In light of the dismissal of Plaintiff's federal action, the Court declines to exercise supplemental jurisdiction over the pendant state claim, pursuant to 28 U.S.C.A. § 1367(c)(3) (West 1993).[4]

4. In support of its Motion to Dismiss, CRA argued in the alternative that the FDCPA does not extend to debts created as a result of a tort or crime such as Plaintiff committed when she re-peatedly wrote bad checks. This proposition is not addressed as I have agreed with Defendant's principal argument.