Oliver MONTGOMERY, Plaintiff,

v.

**SHERMETA, ADAMS & VON ALLMEN, P.C.,** Defendant.

No. 1:11–CV–183.

United States District Court, W.D. Michigan, Southern Division.

Aug. 8, 2012.

Adam Theodore Hill, Chicago, IL, Douglas Baek, Mahadhi Corzano, Krohn & Moss, Ltd., Los Angeles, CA, for Plaintiff.

Jeffrey Steven Hengeveld, Patrick D. Filbin, Plunkett Cooney, Bloomfield Hills, MI, for Defendant.

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAUL L. MALONEY, Chief Judge.

This matter comes before the Court on Defendant Shermeta, Adams & Von Allmen's ("Law Firm") motion for summary judgment. (ECF No. 25.) Plaintiff Oliver Montgomery ("Montgomery") alleges the Law Firm violated the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Occupational Code, Mich. Comp. Laws § 339.915(h). Montgomery filed an amended complaint. (ECF No. 23 "Compl.") The Law Firm filed its answer and affirmative defenses. (ECF No. 24 "Answer".) After the Law Firm filed this motion for summary judgment, Montgomery filed his response. (ECF No. 29.) The Law Firm filed a reply. (ECF No. 32.) Montgomery filed a notice of supplemental authority. (ECF No. 36.) A hearing on the motion occurred on July 5, 2012.

## LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a); *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed.R.Civ.P. 56(c)(1); *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir.2005) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. *Matsushita,* 475 U.S. at 574, 106 S.Ct. 1348; *Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 200 (6th Cir. 2010) ("After the moving party has met its burden, the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505)). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505.

## FACTUAL ALLEGATIONS WITH SUPPORT IN THE RECORD

The parties generally agree that the following facts are true. Montgomery lives in Niles, Michigan. On April 15, 2009, the Law Firm first contacted Montgomery, by letter, in an attempt to collect a debt owed to Capital One Bank. (Compl. and Answer ¶¶ 11 and 13; Pl. Ex. A "April 2009 Letter" PgID 189.) The debt owed arises from transactions for personal, family, and household purposes. (Compl. and Answer ¶ 12.)

On April 29, 2009, on behalf of Montgomery, Debt Counsel for Seniors and the Disabled ("DCDS") faxed the Law Firm a "cease and desist" request regarding the Capital One account. (Compl. and Answer ¶¶ 15 and 16; Pl. Ex. B "April 2009 Desist Fax" PgID 191.) The fax contains several assertions. First, the fax states that the Law Firm "represents [Oliver and Alice Montgomery] for the purpose of enforcing their rights against debt collectors under all applicable federal laws." (April 2009 Desist Fax.) The fax states that the debt is disputed and requests validation of the debt. (*Id.*) The fax states the Law Firm must cease and desist contact "according to §§ 1692(c)(a)(2) *AND* 1692c(c) of the **Fair Debt Collection Practices Act.**" (*Id.*) (emphasis in original). Finally, the fax states that Oliver and Alice Montgomery are insolvent and their income comes exclusively from non-garnishable sources such as social security, disability, and retirement benefits. (*Id.*)

On May 21, 2009, the Law Firm mailed a debt validation letter to Montgomery. (Compl. and Answer ¶ 19; Pl. Ex. D "Validation" PgID 195.)

On May 26, 2009, the Law Firm filed suit against Montgomery in an effort to collect the debt owed to Capital One Bank. (Def. Ex. D PgID 130–31.) The complaint was filed in District Court for the Fifth

Judicial District in Berrien County, Michigan. (*Id.*) On July 17, 2009, Attorney Jerome Lamet ("Lamet"), who had signed the earlier letter from DCDS, sent the Law Firm a letter about the case filed in the Berrien County District Court. (Def. Ex. E "Denial of Representation Letter" PgID 133.) In the letter, Lamet wrote the following:

> As you may already know, my firm represents the above-mentioned defendant for the purpose of enforcing their rights against debt collectors under all applicable federal laws. We do not represent the client with regard to this state lawsuit and will not be filing an appearance on our client's behalf. We will represent them in federal court along with our co-counsel, however, should any violations of the Fair Debt Collection Practices Act or Social Security Act occur.

(*Id.*) Default judgment was entered in the state district court action on August 12, 2009. (Def. Ex. F PgID 135.)

On September 13, 2009, the Law Firm mailed Montgomery a letter regarding the Capital One account. (Pl. Ex. F "September 2009 Letter" PgID 200.) The letter reads as follows:

> We have recently reviewed your account on behalf of our client, CAPITAL ONE BANK (USA), N.A. As of today's date, the balance on this account is $1,384.55. Please contact the Recovery Department at 1–800–451–7992 to discuss payment arrangements.

(*Id.*) On September 21, 2010, more than one year later, Lamet mailed and faxed the Law Firm a letter regarding the state district court case. (Pl. Ex. G PgID 202.) The letter identified Montgomery's income sources and warned the Law Firm that attempts to levy the income would be a violation of federal law.

> I am enclosing proof of the above-referenced client's sole income from exempt sources. Specifically, copies of Mr. and Mrs. Montgomery's Social Security Benefits statements along with a copy of Mr. Montgomery's Pension statement.
>
> You are now on notice of the status of this individual's income. Please be advised that any attempts to levy upon or garnish this client's income will be considered violations of federal law. Thank you in advance for your attention to this matter.

(*Id.*)

On December 14, 2010, the Law Firm sent a second letter regarding the Capital One account. (Pl. Ex. H "December 2010 Letter" PgID 205.) With the exception of the balance of the account, the letter is identical to the September 2009 Letter. The account balance had since increased to $1,569.87. (*Id.*) On December 28, 2010, DCDS mailed and faxed the Law Firm another cease and desist letter. (Pl. Ex. I "December 2010 Desist Letter" PgID 207.) The letter is similar to the April 2009 Desist Fax. The letter states that Montgomery disputes the debt, requests validation of the debt, and states that the Law Firm must cease and desist contact under "15 U.S.C. § 1692c(a)(2) *and* 1692c(c)." (*Id.*) (emphasis in original). The letter reiterates that Montgomery's income comes exclusively from non-garnishable sources. (*Id.*)

Montgomery filed this action on February 21, 2011. The complaint was filed by an attorney with the law firm of Krohn & Moss. The Law Firm was served with the summons and complaint on March 8, 2011. (ECF No. 3.) The Law Firm made an appearance in this lawsuit on March 28, 2011, by filing a stipulation for an extension of time to file an answer. (ECF No. 4.) The answer to the initial complaint was filed on April 19, 2011. (ECF No. 6.)

Approximately one month later, on May 18, 2011, the Law Firm sent another letter to Montgomery regarding the Capital One account. (Pl. Ex. J "May 2011 Letter" PgID 210.) With the exception of the balance, the letter is identical to the September 2009 Letter and the December 2010 Letter. The account balance had since increased to $1,633.42. (*Id.*) DCDS again mailed and faxed a cease and desist letter to the Law Firm.[1] (Pl. Ex. K "May 2011 Desist Letter" PgID 212.) With insignificant differences, this letter is identical to the December 2010 Desist Letter.

## DISCUSSION

The FDCPA was enacted in 1977 for the purpose of eliminating abusive debt collection practices by debt collectors, among other things. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir.1998) (quoting 15 U.S.C. § 1692(e)). The Sixth Circuit Court of Appeals has held that the FDCPA is " 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem." *Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir.2008) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992)). The Sixth Circuit has also acknowledged that the FDCPA is a "strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Loan Mtg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007) (citing 15 U.S.C. § 1692k(a)). The FDCPA regulates where and when a debt collector may communicate with a consumer. *See* 15 U.S.C. § 1692c.

For the purpose of this motion, the Law Firm has not challenged whether it may be considered a "debt collector," as that term is defined by the FDCPA.

### A. 15 U.S.C. § 1692c(a)(2)

 FDCPA prohibits a debt collector from communicating with a consumer when the debt collector knows that the consumer is represented by an attorney with respect to the debt.

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

\* \* \*

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; . . .

15 U.S.C. § 1692c(a)(2). As the party bringing the claim, Montgomery bears the burden of establishing a violation of § 1692c(a)(2). *See McKeown v. Mary Jane M. Elliott P.C.*, No. 07–12016–BC, 2007 WL 4326825, at \*5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.*, 126 B.R. 422, 426 (D.Del.1991)). Therefore, Montgomery must establish that (1) he was represented by an attorney with respect to the debt, (2) the defendant knew he was represented by an attorney with respect to the debt, (3) the defendant communicated with him, and (4) the defendant was not authorized to communicate with him, either by

---

**1.** Krohn & Moss filed the lawsuit in federal court, not Lamet and DCDS. From the record, it is not clear that Krohn & Moss and DCDS have any relationship.

consent or by a court. Whether a consumer was represented by counsel with respect to a debt and whether the debt collector knew that a consumer was represented by counsel is also a question of fact. *See Crouch v. J.J. Marshall & Assocs., Inc.,* No. 1:07–cv–477, 2007 WL 3173975, at *3 (W.D.Mich. Oct. 26, 2007) (Maloney, J.).

The Law Firm argues that Montgomery was never represented by an attorney with respect to the underlying debt. The Law Firm insists that DCDS and Lamet represented Montgomery only for the purpose of enforcing his rights against debt collectors. The Law Firm makes the same argument with respect to the relationship between Krohn & Moss and Montgomery.

■ On this record, the Law Firm is not entitled to summary judgment for Montgomery's § 1692c(a)(2) claim arising from the May 2011 letter. The Law Firm was already aware that Montgomery had filed suit against it for previous contacts regarding the same debt. The Law Firm had been served and had filed an answer in the lawsuit, before the May 2011 letter was sent to Montgomery. This leaves the Law Firm in the awkward situation of having the claims raised in the initial complaint dismissed, but the lawsuit nevertheless going forward on the amended complaint based on a single letter sent after this lawsuit was served and answered.

■ Montgomery does *not* assert *any* explanation to support a claim that he was *ever* represented by DCDS or Lamet with respect to the debt. Therefore, Montgomery has failed to establish a genuine issue of material fact for a claim arising from the April 2009, September 2009, or December 2010 Letters. Citing this Court's opinion in *Crouch,* Montgomery argues that knowledge of representation by an attorney based on a prior lawsuit is a question of fact. *Crouch* is clearly distinguishable from the instant case. Krohn & Moss, the law firm involved in *Crouch,* did not send any Denial of Representation Letter, like the one sent by Lamet.

## B. 15 U.S.C. § 1692c(c)

Under 15 U.S.C. § 1692c(c), the FDCPA prohibits communication with the consumer when the consumer has stated in writing that the debt collector should cease further communication with the consumer, subject to three exceptions.

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> > (1) to advise the consumer that the debt collector's further efforts are being terminated;
> >
> > (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> >
> > (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

*Id.* § 1692c(c). The Sixth Circuit Court of Appeals has held that the prohibitions contained in subsection (c) are broad; "it not only states that a debt collector may not make a demand for payment following a cease-communication letter, but prohibits communication of any kind other than those falling within the three exceptions." *Lewis,* 135 F.3d at 398.

In *Lewis,* the debt collector, ACB, initiated contact with Lewis in February and, in March, Lewis sent ACB a cease-communication letter. In June, ACB sent Lewis a letter. The letter began "IN A PERCENTAGE OF CASES, I FIND THAT PAYMENT ARRANGEMENTS MAY

NOT HAVE BEEN OFFERED BY OUR AFFILIATED OFFICE." *Id.* at 396. The letter identified several payment arrangements and asked Lewis to select one and enclose payment. *Id.* The letter also provided a contact number where Lewis could reach ACB if he had any questions about the payment plans. *Id.* The court concluded that the letter fell within the second exception, § 1692c(c)(2). The court held that "the letter can be construed as a type of settlement offer and that ACB normally invokes such a remedy." *Id.* at 399. The court reasoned that a debt collector should be able to communicate payment options as part of an effort to resolve outstanding debts without litigations. *Id.* The court further held that although ACB

> could have more clearly expressed its character as a notice of a normally invoked remedy had it included other typically invoked remedies, such as filing a lawsuit, nothing in the statute requires that the letter give notice of all the remedies normally invoked by debt collectors, and the statute does not require that a debt collector invoke any specific type of remedy. Rather, it allows the debt collector to notify the consumer of remedies *it* normally invokes.

*Id.* (italics in original); *see Marino v. Hoganwillig, PLLC,* No. 11–cv–435s, 2012 WL 1424733 (W.D.N.Y. Apr. 24, 2012).

■ The Law Firm argues that the letters they sent to Montgomery fall within the second exception contained in § 1692c(c)(2). The Law Firm contends the letters are similar to the letter in *Lewis.* The Law Firm asserts the letters simply gave Montgomery an opportunity to pay the debt through various payment plans. Montgomery disagrees and distinguishes *Lewis.* Montgomery begins by noting that the Law Firm has not challenged that he sent cease-communication letters to the Law Firm. Montgomery also notes that the Law Firm has not chal-

lenged that it sent the May 2011 Letter to Montgomery after it received several cease-communications letters. Montgomery explains that the May 2011 Letter makes no mention of any remedy that either the Law Firm or any creditor might invoke. Montgomery further explains that the letter does not provide any payment options, but requests that he contact the Law Firm in order to learn what the payment options might be.

The Law Firm is not entitled to summary judgment on Montgomery's § 1692c(c) claim. The May 2011 Letter may not be an "abusive" communication; it is not threatening, it is not deceiving, and it was not one of many messages sent in a pattern of harassment. However, the FDCPA is a strict liability statute. *See Lamar,* 503 F.3d at 513. The Law Firm has not established on this record that the May 2011 Letter falls within the (c)(2) exception. Unlike the letter in *Lewis,* no payment options are provided. In other words, there are no "specified remedies" identified in the letter. Instead, Montgomery is invited to call the Law Firm to discuss those options. Of course the Law Firm would like Montgomery to call it, because Montgomery has already asked the Law Firm not to communicate with him. Further, this letter contains no notification that the Law Firm may invoke specified remedies.

### C. 15 U.S.C. § 1692k(c)— Bona Fide Error

■ The FDCPA limits the liability of a debt collector under certain conditions. *See Jerman,* 130 S.Ct. at 1609. The section of the statute commonly referred to as the "bona fide error" defense provides as follows:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the

violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c). The bona fide error defense is an affirmative defense on which the debt collector bears the burden of proof. *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1034 (6th Cir.1992). The debt collector must show, by a preponderance of the evidence that (1) the violation was unintentional, (2) the violation was a result of a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 614 (6th Cir.2009). The first element of the bona fide error defense is a subjective test that assesses the credibility of the debt collector's assertions that the FDCPA violation was not intentional. *Richburg v. Palisades Collection LLC,* 247 F.R.D. 457, 467 (E.D.Pa.2008) (citing *Johnson v. Riddle,* 443 F.3d 723, 728–29 (10th Cir.2006)). The second and third elements of the bona fide error defense are objective inquiries. *Id.; Johnson,* 443 F.3d at 729 (collecting cases). Ordinarily, the determination of whether procedures are reasonable is a fact-intensive inquiry and is left to the fact-finder to resolve. *Narwick v. Wexler,* 901 F.Supp. 1275, 1282 (N.D.Ill.1995). Where the undisputed record establishes that the procedures in place are extensive and were adhered to, the matter may be resolved as a question of law. *See id.*

▉ The Law Firm argues it has adopted reasonable procedures to avoid contacting a consumer after a cease-communication letter is received. As evidence, the Law Firm relies on an affidavit from Jeanne Stuart, the Office Administrator for the Law Firm. (Def. Ex. N "Stuart Affidavit" PgID 158–60.) Stuart states that the Law Firm has various procedures in place to avoid FDCPA errors, including:

-designating a compliance officer to be responsible for ensuring compliance with the FDCPA (¶ 2)

-training programs for new employees on collection practices and compliance with the FDCPA (¶ 3)

-annual seminar for all employees, attorney and non-attorney, on FDCPA and attorney seminars throughout the year on changes to the FDCPA (¶ 4)

-written policies and procedures on FDCPA, including the statute itself, trade publications, relevant cases, and the firm's own FDCPA manual (¶ 5)

-centralized computer program that details its collection efforts for each consumer (¶ 6)

Stuart also states that, in an attempt to settle a debt, in the normal course of business, letters are sent to consumers after judgment or default judgment is entered against the consumer. (*Id.* ¶ 9.) Stuart states that normally no collection letters are sent when an individual is represented by an attorney; however, here the collection file indicated that Montgomery was not represented by Lamet for the purpose of the debt at issue. (*Id.* ¶ 10.) Finally, Stuart states the letters on May 7, September 18, December 14, and May 18 were sent unintentionally because the computer automatically generated those letters.[2] (*Id.* ¶ 11.)

For the Law Firm's bona fide error defense as to the May 2011 Letter, there remain genuine issues of material fact. As already discussed, the Law Firm had been served with a copy of the summons and complaint, and had filed its answer to the

---

**2.** A computer only performs the tasks for which it is programmed. The question is whether the practices in place, including the restrictions programmed into the Law Firm's computer, were reasonable.

complaint, before the May 2011 Letter was generated by its computer. Although the Law Firm may have had procedures in place to prevent this sort of violation of the FDCPA, the fact that the computer generated *multiple* letters raises an issue of fact whether those procedures were reasonable. This conclusion is further supported by the fact that the Law Firm received more than one cease-communication letter from Lamet.

### D. Michigan Occupational Code

Michigan has at least two statutes regulating the practice of debt collection, the Michigan Debt Collection Practices Act, Mich. Comp. Laws § 445.251 *et seq.*, and the Michigan Occupational Code, § 339.101, *et seq. See Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841, at *10 (Mich.Ct.App. Dec. 22, 2011) (per curiam). The portion of the Michigan Occupational Code that regulates collection practices includes a definition of "collection agency." *Id.* § 339.901(b). The definition is lengthy, and ends with the following sentence:

> Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following:
>
> * * *
>
> (xi) An attorney handling claims and collections on behalf of clients and in the attorney's own name.

*Id.* § 339.901(b)(xi).

▪ The Law Firm argues that it falls under the exemption within the definition of "collection agency" in the Michigan Occupational Code. The Law Firm argues that, on that basis, Montgomery's claim under the Michigan Occupational Code must fail.

Montgomery responds that the lengthy definition of "collection agency" describes activities in which the Law Firm was engaged. Montgomery argues that the Law Firm has put forth no evidence that firms, rather than individuals, fall under the exemption. Montgomery also argues that law firms are covered by Michigan statutes regulating debt collection, citing *McKeown*, at *9 and *Misleh v. Timothy E. Baxter & Assocs.*, 786 F.Supp.2d 1330 (E.D.Mich.2011).

The Law Firm is entitled to summary judgment on Montgomery's claim under the Michigan Occupational Code. The plain language of the statute excludes the Law Firm from the definition of "collection agency." *See generally, McCormick v. Carrier*, 487 Mich. 180, 795 N.W.2d 517, 524–25 (2010) (summarizing the familiar principles of statutory construction). Under subsection (xi), attorneys handling debt claims and collection efforts for their clients and on their own behalf are exempt. Montgomery's legal authority is not helpful. In *McKeown*, the court concluded that the defendant law firm was not a collection agency under the Michigan Occupational Code, but was a collection agency under Michigan's Collection Practices Act, Mich. Comp. Law § 445.251, *et seq.*, specifically Mich. Comp. Law § 445.251(g)(xi). Montgomery has not raised a claim under the Michigan Collection Practices Act. In *Misleh*, the plaintiff raised claims under the FDCPA and the Michigan Collection Practices Act.

### CONCLUSION

There remain genuine issues of material fact precluding summary judgment on Montgomery's FDCPA claims arising from the May 2011 Letter. When that letter was sent, the Law Firm was aware that it had been sued by Montgomery for prior contacts about the same underlying debt. However, the Law Firm is entitled to summary judgment on Montgomery's claim under the Michigan Occupational Code.

## ORDER

For the reasons provided in the accompanying opinion, Defendant Shermeta, Adams, & Von Allmen's motion for summary judgment (ECF No. 25) is **GRANTED IN PART and DENIED IN PART.** Plaintiff Montgomery's claim under the Michigan Occupational Code is **DISMISSED WITH PREJUDICE. IT IS SO ORDERED.**